Good morning, Your Honors. May it please the Court, I'm Mark Zilversmith on behalf of Petitioner La Carl Martez Dow. I'd like to reserve two minutes for rebuttal. The State has conceded most of the essential points necessary for relief in this case, and they have taken a position that's precluded by prior case law with respect to the remaining point. The State has conceded that the prosecutor presented false testimony and made false argument to the jury, which is what the State Court found. The State has conceded that the prosecutor knew or should have known the testimony was actually false, and the State Court found that it was in fact a deceptive and misleading argument made by the prosecutor to the jury. At what point was the prosecutor aware that the police officer had testified erroneously? Do we know? Does the record show? I believe she was always aware. Okay. Your Honor, I'm actually not sure if I can point to where that is in the record, but the State Court definitely made a finding that's entitled to a presumption of correctness that she knew or should have known that. Can we, as the State argues, assume that the Court of Appeal implicitly held that the NAPU error was not material? That type of reasoning is precluded by this Court's en banc decision in France v. Hazy. If you look at France v. Hazy, which I cited in my briefs, applying the wrong legal standard is contrary to Supreme Court law, and the federal court cannot, quote, invent an alternative rationale for the State Court's decision. When you invent a hypothetical alternative rationale for the State's Court's decision, that is, in fact, distorting the purpose of AEDPA, and it's ignoring rather than respecting the State's Court's analysis, and that's all in the en banc majority opinion in France v. Hazy. And what year was that opinion? 2010, possibly? That's close enough. Okay. Give or take a year. The burden is, in a NAPU case, for any reasonable likelihood that the false evidence could have affected the burden. And in Chapman, the Court said it's essentially harmless beyond a reasonable doubt. This Court has said it's virtually automatic reversal, and the only cases in which this Court has found no NAPU error materiality are cases in which there's overwhelming evidence. To what effect should we consider the fact that in the first trial, which is essentially identical except for the NAPU error in the second, there was a hung jury? That's a very important salient point, Your Honor, because in the concurring opinion in Kiles v. Whitley, Justice Stevens and two other justices said that that is a factor in concerning the materiality of the error. And that was also, I believe, in Kennedy v. Lockyer, this Court in a footnote said that that was a very important point to consider in assessing prejudice, the fact that when there was no error, it was a hung jury. The evidence in this case is not only not overwhelming, it's very weak. It's a one-witness I.D. case with some minimal corroboration of a rather nondescript gray sweatsuit, which many of us possess. Judge Reinhardt has four of them. I thought I saw him jogging. Actually, I never had. So this case, you know, is it probable cause for a warrant to say when a witness points out in a group of a lineup of nine people and says it looks most like him and then you have a gray sweatshirt, is that probable cause for a warrant? Maybe. Is it would you reverse the judgment for insufficiently? Probably not. But it's certainly weak. And the Supreme Court has repeatedly said that mistaken eyewitness I.D. is a major factor, and the Supreme Court of New Jersey identified it as the most common reason for wrongful conviction in this country. So we have a very weak case. We have what has been called an egregious prosecutorial error by the Supreme Court in Donnelly, where you tell the jury something false. And it's not one point. In Brown v. Hayes, the en banc decision where this court reversed for Napier, and in Jackson v. Brown and in Seebeck v. Hardison, we have impeaching evidence that was held material on points. This is not impeaching evidence. This is evidence where the prosecutor said asking for a fair lineup was probative because it was consciousness of guilt. It's direct evidence. It's tantamount to arguing that this was a confession of guilt by the petitioner in this case. It's a very, very damning argument, very egregious misconduct. And the evidence on the other side is very weak. So it's essentially conceded, and the points that are disputed are really indisputable. But what about the failure of the lawyer to object when that testimony came in? The failure, you can't And that sort of opened the door to everything that happened after that. Right. This court has said that I believe in Seebeck, Your Honor's opinion in Seebeck, that whether the lawyer objects is irrelevant because you cannot waive the independent duty, and in Northern Marianas v. Bowie, I think you were quoting from, you cannot waive the independent duty of the prosecutor not to commit this kind of misconduct and undermine the integrity of the judicial system. I mangled that quote. But that's in Seebeck, and it's in Northern Marianas v. Bowie. And he did object in argument, and the court exacerbated it by overruling it. Oh, no, counsel, it's in the record. I remember that evidence, which, candidly, I would have done as district judge. There's no objection. Yeah, go ahead, counsel. But that's the problem. The prosecutor was aware, or should have been aware, that this was wrong. Does the record indicate whether the lawyer was aware at the time the testimony came in, or was he the same lawyer that attended the lineup? That I can't tell you. Okay, so we don't know. He may not have, for whatever reason, found out until afterwards from his client. At some point he learned, obviously, because he stood up in open argument. Right. But the prosecutor knew, or should have known, as the Court of Appeal of the State of California found. In any event, the lawyer may not have objected, even if he did know. I don't know. If he knew, perhaps not. Perhaps I recall this incorrectly, but I thought he did object in that the judge twice overruled the objections and sustained what the prosecutor had done, which exacerbates the error, if that's what it was. Is that correct? That's correcting argument. Perhaps I misunderstood. You were talking. I was asking about at the time the testimony came in. Oh, I see. That's what I meant. And what the state court did say is that an objection would have been wise. I do recall that in the record. They made a finding that he should have objected, so that sort of subsumes the idea that he didn't know about it. There were really three different stages. I think, one, when the evidence was introduced, he didn't object. Then later on, he objected on the ground that there was no such evidence. Right. And the judge said, oh, yes, there is that kind of evidence. And then the third stage was at the argument where I think he objected twice to the or maybe it was earlier, but he objected twice to something, but I think he did not object when it was originally introduced. That's correct. And the state court found that he should have objected. But that it didn't affect the outcome. That's what they found. Yeah. And if you get to it on that basis, I think that's an unreasonable determination of the facts under ADP. Let's not go too far. You wanted to save two minutes. Oh, yes. Thank you, Your Honor. Thank you. Good morning. May it please the court. Glenn Pruden on behalf of the warden. Let me ask you, do you agree with counsel that the real issue in the case is whether this was material or prejudicial? That is the only element that was not really conceded by the finding that the prosecutor knew or should have known about this false evidence being presented. So, yes, it hinges on materiality and whether or not it's material either under the proper federal standard or under the state standard that was ultimately employed. It's our position that implicit in the state appellate court's opinion is the fact that they did not find materiality under the federal standard because they talk about both the federal standard for prosecutorial misconduct and then they give the state standard for prosecutorial misconduct. The federal standard is a stricter standard. Aren't we reviewing it on a federal basis here? That's correct. And so what is implicit is that they found that there was no federal constitutional error because they then went on to address the error that they did find under the two prongs of the state test, which is the despicable or reprehensible conduct on the part of the prosecutor. Is there really a difference in this case where the question is did this really affect the outcome or could it have? Under what standard do you think that this would not be material given the closeness of the case? Well, I submit, Your Honor, that giving it at pedeference to the state appellate court's decision under the federal standard, it is not material, nor was it material under the state standard. And now the factors that we look at. Well, do you give it pedeference to the materiality determination in a NAPU violation? Absolutely, Your Honor. Absolutely, Your Honor. Isn't it Brecht determination? No, there is no Brecht determination, Your Honor, when you find a NAPU error in the same sense that you don't have a Brecht analysis if you find a Brady violation. It goes beyond that standard. So the error cannot be harmless if you find materiality under the NAPU test. Then the real question is, is it material under the NAPU test? And we would submit that it is not, Your Honor. Okay. And again, this Court must look at it at the materiality analysis under the NAPU test through the lens of AEDPA. Well, if we're doing that, if I understand it correctly, under Chapman NAPU, the burden is on the state since you concede error to prove that the error was harmless beyond a reasonable doubt. Is that right? That is correct. The state has to show and it is shown in the record. And the elements that the state appellate court looked to to find that there was no materiality under the state harmless or excuse me, under the state prosecutorial misconduct test are also the elements that the district court looked at in their analysis under the AEDPA standard, under her analysis, to find that, in fact, it was a reasonable determination by the state appellate court. I strongly disagree with several things that my opponent has said in his argument. First of all, while a hung jury may be a factor that the court can look at, two trials were not as similar as he might like this court to believe. The first trial, the defense presented no evidence. They rested after the prosecution closed their case. And I would also submit that if this court were to read Mr. Subod, who was the primary witness for the prosecution, if you read his testimony at the first trial, he's a very unsure witness at that trial. The court repeatedly interrupts his testimony because he's not responsive to questions. He's talking over the attorney. And he just does not come across very strong. In the second trial, his testimony is much more to the point. He seems to be a confident witness. And one of the reasons is probably because he's been through the ordeal because he was better prepared by the press. Yeah, I'm not sure that necessarily helps. I would not doubt that, Your Honor. Prosecutor probably pointed out some some behavioral aspects. I mean, we don't know that for certain, but I know I would do something like that. I think I know the answer to this question. But can we independently determine in our own view the materiality question? Or are we foreclosed from sort of independently on our own doing that? And if so, why? And third, what does that mean in terms of what we can do about this? It's our position that you are foreclosed from independently determining materiality, that you have to look at it through the lens of AEDPA, which means it's not whether you find that there was an erroneous determination of materiality on the part of the State Appellate Court, but whether or not it was objectively reasonable. So I believe that answers all of Your Honor's questions. That's what I thought. And how was this objectively reasonable? Well, Your Honor, as I said, the testimony from Mr. Sublod was very, very strong at this second trial. And I think also it goes to the point that one of the things that he did not say in his initial testimony, as he did in the second one, is that he was familiar with African Americans because he had come into contact with them throughout his five years of business experience here in the United States on a very frequent basis. Also, if one examines the questions that the jury posed immediately after getting the case, they were not troubled at all by, or not necessarily troubled, but their focus was not on the physical lineup. Their questions were directed toward readback of testimony about Mr. Sublod's initial identification of Mr. Dow to the investigating officer on the night of the robbery, and also the events and circumstances surrounding the photographic lineup, which took place two months afterward. The physical lineup, just to put this in timeline perspective, the robbery was in November of, I believe, 2002. The photo lineup, which was one of the readbacks that the jury wanted, took place in January of 2003. And the physical lineup, if I remember correctly, didn't take place until either June or July of 2003. May I just follow up on Judge Corey's question? When we look at this legally as to the correctness of the materiality determination, don't we look at whether, don't we look at that applying the NAPU rule first, whether there is any reasonable likelihood that the false testimony could have affected the judgment of the jury? If it was likely. It's a likelihood standard versus a reasonable probability standard. The NAPU versus either the Watson standard, which would also be the Brady standard, where you have a reasonable probability. I wish someday, if you have time, you can explain to me the difference between all of those things, like likelihood, probability, reasonable one, which is the other. Not today, because we don't have time. Absolutely, Your Honor. I'd love to understand that difference. I would, too, Your Honor. If you were here yesterday, I would have asked whether you were an equipoise. Thank you, Your Honor. You and Judge Reinhart should have a nice lunch. Well, it really troubles me about this case. But that is the standard that we look at, and to see whether that's objectively erroneous. No, Your Honor. Not objectively erroneous. Your Honor looks at whether or not the state appellate court's determination that there was no materiality under the NAPU standard is an objectively reasonable determination. Did they say they were applying the NAPU standard? Specifically, no. But they did give the overarching standard for prosecutorial misconduct when it creates a due process violation. And if you satisfy the materiality prong under NAPU, you have prosecutorial misconduct. And as I think this Court would agree, the overarching principle of a due process violation is whether or not the defendant has received a fundamentally fair trial. So essentially, if you find materiality, you get to the standard of a violation of due process because the defendant has not received a fundamentally fair trial. And my problem is, he or she emphasized, this is evident consciousness of guilt, ladies and gentlemen. That's a powerful argument. It really is. And that's what troubles me the most. And it troubles the state appellate court as well, Your Honor. However, whether or not it's material, again, we have to look at the entire trial. And it's very telling that the jury was most concerned about what happened in these first two identifications, not the physical lineup. And as the testimony— That may have been because of the prosecutor's argument.  They had that evidence. And he or she pointed to that. And for that, they may have been working backwards from that. We don't know. We can't— There were no court reporters in the jury room, obviously. Absolutely, Your Honor. However, it is a reasonable determination on the part of the state appellate court that whether or not the defendant or his counsel asked to have these Band-Aids put in place really would not have mattered. That's what you say, really would not have mattered. You sort of skip over the question. Well, I said these somewhat humorously before. At least, I meant to be humorous. The difference in the standard the state court applied and the NAPU standard is this. The state court said if the misconduct occurred, as it said it did, we determine whether it is reasonably probable that a result more favorable to the defendant would have occurred, which sounds like the state starts out ahead unless you prove that it's probable that he would have won. The NAPU standard is if there is any reasonable likelihood that it could have affected the judgment of the jury. Don't you see a difference between those two standards? Oh, I do, Your Honor, but that, I believe, misses the point of what I've been saying. First, I'm going to let you answer that. I'm sorry. But the first standard is the NAPU standard, and the second is the Welsh standard, which the state applied. That's correct, Your Honor. All right. And as I said in my opening, the state appellate court, it's not a model clarity the way the opinion is written, but they do acknowledge the federal standard, and they go on, though, to address under the state standard. They acknowledge it, but they didn't apply it, did they? They did, Your Honor. The federal standard? Yes, Your Honor. There's nothing in this record to the contrary. Other than the application of the Welsh standard, which is contrary. The Supreme Court has said as long as they reach the objectively reasonable result under the federal standard, they don't even have to cite to the federal case law. But if they cite a contrary standard, isn't that different? I mean, it's true. You could just go ahead and analyze this circumstance without applying any case. That could be done. But when they tell you what standard they're applying, and then they say you don't meet this standard, and as you say, it's not as strict a standard as the federal standard, aren't they saying we are not applying the federal standard? We're applying this contrary standard. No, Your Honor. I would submit that is not what happened. I see my time is up. That's all right. No, no. Go ahead. I would disagree. I maintain that the state appellate court applied the correct standard and immediately dismissed it and then moved on to analysis under the state prosecutorial misconduct standard. Thank you very much. Thank you, Your Honor. I'm sorry if I took too much of your time. No, Your Honor. But you can have lunch with Judge Smith. Your Honor, the state court never said and never acknowledged the NAPUI standard for materiality. They never said NAPUI requires the state to prove that there's no reasonable likelihood of an effect on the verdict. They explicitly used the wrong standard, which is putting the burden on petitioner, the defendant, to show a reasonable probability. And the France v. Hazy en banc court says you cannot defer to an implicit ruling, and that's actually standing AEDPA on its head. If the court has any further questions. Well, it just seems to me there's a difference between reciting the proper standard and then having a bunch of citations behind it. If you recite the proper standard, I think that's okay. I think that's what counsel says. But you don't have to recite where it comes from. That's true. What they cited was the Donnelly standard. I understand that. And the Donnelly opinion says we're actually not considering the type of egregious misconduct that happened in Miller v. Pate. And they also cite NAPUI and Mooney, which is our case. They're saying Donnelly is not this case. And what the state court did is it cited the Donnelly standard. Thank you, counsel. Thank you, counsel. And I don't get any invitations to lunch. No, because you said thank you, counsel. Oh, okay. Thank you very much. Thank you both very much for excellent arguments. And the case to be submitted.
judges: Carr, Reinhardt, Smith